IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DAVID ACOSTA,

      Plaintiff,

  v.

No. CIV.S-05-0878 DAD

ORDER

JO ANNE B. BARNHART,
Commissioner of Social
Security,

      Defendant.
_____/

This social security action was submitted to the court, without oral argument, for ruling on plaintiff's motion for summary judgment and/or remand and defendant's cross-motion for summary judgment. For the reasons explained below, the decision of the Commissioner of Social Security ("Commissioner") is reversed and this matter is remanded with the direction to grant benefits.

**PROCEDURAL BACKGROUND**

This action concerns plaintiff David W. Acosta's application for Supplemental Security Income under Title XVI of the

1

Social Security Act (the "Act").  In a decision dated April 22, 1993, the Commissioner found plaintiff disabled with an onset date of January 1, 1990.  (Transcript ("Tr.") at 23.)  The disability was due to congestive heart failure, alcoholic cardiomyopathy and alcohol abuse.  (Id.)  In a continuing disability review decision dated April 5, 1995, plaintiff again was found disabled as a result of a recent heart transplant.  (Id.)  However, in a later continuing disability review decision dated January 10, 2003, the Commissioner decided that plaintiff's benefits were properly ceased as of June 1, 2002, because plaintiff had experienced a medical improvement and he was capable of light work.  (Tr. at 23, 539-49.)

Pursuant to plaintiff's request, a hearing was then held before an administrative law judge ("ALJ") on September 4, 2003, at which time plaintiff elected to proceed without the assistance of counsel or other representative.  (Tr. at 617-33.)  In a decision issued on September 19, 2003, the ALJ determined that plaintiff was not disabled.  (Tr. at 19-26.)  The ALJ entered the following findings in this regard:

> 1.  The claimant was found to be disabled and eligible for supplemental security income under Title XVI as of January 1, 1990.
>
> 2.  The claimant has not performed substantial gainful activity since January 1, 1990.
>
> 3.  Pursuant to a Continuing Disability Review (C.D.R.) decision, dated January 10, 2003, it was determined that the claimant's disability ceased effective June 1, 2002.

/////

2

4.  The record as a whole supports a finding that there has been medical improvement in the claimant's condition since April 5, 1995, the Comparison Point Decision.

5.  The claimant's medical improvement is related to his ability to work.

6.  The claimant's testimony is not substantially credible, for the reasons stated in the body of the decision.

7.  The claimant is severely impaired as a result of a cardiac impairment. The claimant's alcohol abuse and depression are no longer severe impairments.

8.  The claimant no longer has an impairment or a combination of impairments which either meets or equals any listed impairment in 20 CFR Part 404, Subpart P, Appendix 1.

9.  Since June 1, 2002, the date the claimant's disability benefits were ceased, he has had the exertional residual functional capacity to perform light work. His exertional limitations precluded him from frequently lifting more than 10 pounds and occasionally lifting more than 20 pounds (20 CFR 416.945).

10. The claimant cannot perform his past relevant work.

11. The claimant is a 44 year old younger age individual who has a high school education and skilled past relevant work experience.

12. The claimant does not have any acquired work skills which are transferrable to the unskilled or semiskilled work functions of other work (20 CFR section 416.968).

13. Because the claimant has the ability to perform light work, rule 202.21 of Table No. 2, Appendix 2, Subpart P,

3

          Regulations No. 16, indicates that a
finding of not disabled would be
appropriate.

          14.   The claimant's disability was properly
ceased on June 1, 2002.

(Tr. at 25-26.)  The ALJ's decision became the final decision of the Administration when the Appeals Council declined review on March 9, 2005.  (Tr. at 6-10.)  Plaintiff then sought judicial review, pursuant to 42 U.S.C. § 405(g), by filing the complaint in this action on May 3, 2005.

      Finally, on October 14, 2005, plaintiff David Acosta died. By order filed June 28, 2006, minors and sole heirs Jessica Whitley, Sylvia Acosta and David Whitley were substituted in place of David Acosta by reason of his death.  Sheryl Whitley was appointed Guardian Ad Litem of the minors.

**LEGAL STANDARD**

      The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).  The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Morgan, 169 F.3d at 599; Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401

(1971)); see also Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (Substantial evidence "is more than a mere scintilla but not necessarily a preponderance.")

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920. See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). This five-step process can be summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an

5

>       impairment listed in 20 C.F.R., Pt. 404, Subpt.
>       P, App. 1?  If so, the claimant is conclusively
>       presumed disabled.  If not, proceed to step four.
>
>       Step four: Is the claimant capable of performing
>       his past work?  If so, the claimant is not
>       disabled.  If not, proceed to step five.
>
>       Step five: Does the claimant have the residual
>       functional capacity to perform any other work?
>       If so, the claimant is not disabled.  If not, the
>       claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).  The claimant bears the burden of proof in the first four steps of the sequential evaluation.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

**APPLICATION**

It is contended in plaintiff's motion for summary judgment that despite any improvement in his condition since 1995 he remained unable to perform any type of substantial gainful activity.  In this regard, plaintiff asserts that the ALJ erred at step two of the sequential evaluation process in not finding him to have a "severe" mental impairment.  It is well-established that at step two of the sequential evaluation the ALJ must determine if the claimant has a medically severe impairment or combination of impairments.  Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005); Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing Yuckert, 482 U.S. at 140-41).  The purpose of step two of the sequential evaluation is merely to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and

1  experience were taken into account.  Yuckert, 482 U.S. at 153.  "An
2  impairment or combination of impairments can be found 'not severe'
3  only if the evidence establishes a slight abnormality that has 'no
4  more than a minimal effect on an individual's ability to work.'"
5  Smolen, 80 F.3d at 1290 (citations omitted).  See Webb, 433 F.3d at
6  686; see also 20 C.F.R. §§ 404.1521(a), 416.921(a).

7         Here, the record indicates that plaintiff suffered from
8  anxiety and depression which limited his ability to work.  Plaintiff
9  had been prescribed Prozac for anxiety and depression which only
10 "helped somewhat."  (Tr. at 298.)  Examining psychiatrist Les P.
11 Kalman, M.D. saw plaintiff on May 31, 2002, and assessed that he
12 suffered from a depressive disorder.  (Tr. at 442.)  Plaintiff was
13 found to have decreased abilities to deal with supervisors, co-
14 workers and the public as well as decreased abilities to withstand
15 the stress and pressures of daily work activities.  (Id.)  Dr. Kalman
16 also found plaintiff not competent to handle his own funds.  (Tr. at
17 443.)  Both nonexamining physicians considered Dr. Kalman's report
18 and assessed numerous moderate limitations regarding plaintiff's
19 abilities to engage in work-related mental activities.  (Tr. at 493-
20 96, 524-27.)  In short, every physician to pass on the severity of
21 plaintiff's mental impairment found significant limitations.  This
22 evidence clearly indicated that plaintiff's anxiety and depression
23 had more than a minimal effect on his ability to work.  Moreover,
24 plaintiff's medical history indicates that he suffered from something
25 more than a slight abnormality during the relevant time period.  In
26 reaching this conclusion the court is particularly mindful that the

1  step-two inquiry is but "a de minimis screening device to dispose of
2  groundless claims." Smolen, 80 F.3d at 1290 (citing Yuckert, 482
3  U.S. at 153-54).  See also Edlund v. Massanari, 253 F.3d 1152, 1158
4  (9th Cir. 2001).  Reversal is required for this reason.

5  Plaintiff also persuasively argues that the ALJ erred in
6  evaluating plaintiff's own testimony regarding the severity of his
7  symptoms and the resulting limitations those symptoms placed upon
8  him.  It is well-established that the determination of credibility is
9  a function of the ALJ, acting on behalf of the Commissioner.  See
10 Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  An ALJ's
11 assessment of credibility should, in general, be given great weight.
12 Nyman v. Heckler, 779 F.2d 528, 530-31 (9th Cir. 1985).  Thus,
13 questions of credibility and resolution of conflicts in the testimony
14 are functions solely of the Commissioner.  Morgan, 169 F.3d at 599.
15 In evaluating a claimant's subjective testimony regarding pain and
16 the severity of his or her symptoms an ALJ may consider the presence
17 or absence of supporting objective medical evidence along with other
18 factors.  See Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991);
19 see also Smolen, 80 F.3d at 1285.  Ordinary techniques of credibility
20 evaluation may be employed, and the adjudicator may take into account
21 prior inconsistent statements or a lack of candor by the witness.
22 See Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989).

23 Nonetheless, an ALJ's rejection of a claimant's testimony
24 must be supported by specific findings.  Morgan, 169 F.3d at 599;
25 Matthews v. Shalala, 10 F.3d 678, 679 (9th Cir. 1993)(citing Miller,
26 770 F.2d at 848).  Once a claimant has presented evidence of an

8

underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of his or her symptoms merely because the testimony is unsupported by objective medical evidence. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Chater, 119 F.3d 789, 792 (9th Cir. 1997). Rather, "the ALJ can reject the claimant's testimony about the severity of [his or] her symptoms only by offering specific, clear and convincing reasons for doing so." Light, 119 F.3d at 792. See also Reddick, 157 F.3d at 722.

Here, it is clear that plaintiff's medical records documented conditions associated with plaintiff's cardiac condition and mental health which might reasonably be expected to cause the symptoms alleged by plaintiff. The ALJ found plaintiff's statements regarding the impact of his impairments on his ability to work to be less than credible. In finding plaintiff not to be substantially credible, the ALJ relied on plaintiff's "testimony that his daily living activities include cooking, shopping, washing dishes, vacuuming, dusting, taking the trash out, lifting up to 25 pounds and riding his bicycle." (Tr. at 24.) The ALJ also reasoned that plaintiff "has not received regular medical care since his benefits were ceased and admitted at the hearing that his treating physicians believe his heart is o.k. now despite initial episodes of mild rejection." (Tr. at 24.)

The court notes as a general matter that social security claimants need not be "utterly incapacitated to be eligible for benefits." Fair, 885 F.2d at 603. See also Webb v. Barnhart, 433 F.

9

3d 683, 688 (9th Cir. 2005); Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.")  Moreover, the record as a whole indicates that plaintiff's daily activities were more limited than suggested by the ALJ in his decision.  For example, plaintiff actually testified that his mother did most of the cooking and the only specific meal preparation plaintiff testified to was "I'll make cereal[.]"  (Tr. at 629.)  Plaintiff also testified to suffering from significant limitations with respect to walking, standing and sitting.  (Tr. at 627.)  Plaintiff testified that he could lift 25 pounds but "just like maybe one second and then just drop it or put it wherever I'm going to put it."  (Tr. at 628.)  Indeed, plaintiff testified that he rode his bike, but only to the bus stop to catch the bus, presumably because plaintiff could not ride significant distances.  Notably, the ALJ did not question plaintiff at any length regarding riding his bicycle.

Finally, plaintiff did not testify at the administrative hearing that his heart was "o.k."  Rather, his testimony on the subject was decidedly guarded.  About his heart, plaintiff testified:

> It's fluttering.  I feel it.  It flutters, but according to the last biopsy, they seem to think it was doing okay, but the one before that I had -- was getting heart rejection -- mild rejection, but even though it's -- the biopsy comes out all right, you know, nobody really knows how I really feel, not even the doctor.

10

                                    * * *

>       I'm shaking.  I don't really know because when I
>       have a rejection, I've had two.  I felt the same
>       as always, but I didn't -- they said you can't
>       tell.

(Tr. at 624, 626.)  Therefore, rather than indicating that his heart was now "o.k.," plaintiff actually testified to a shaking and fluttering heart that caused him to worry about worsening heart rejection.

        The court finds that by mischaracterizing plaintiff's testimony, the ALJ failed to offer specific, clear and convincing reasons for rejecting plaintiff's testimony regarding the severity of his symptoms and their impact on his ability to work.  The Commissioner's decision must be reversed for this reason as well.

        In light of the errors identified above, it is unnecessary to address the remainder of plaintiff's arguments.  However, the appropriate remedy must be determined.  The decision whether to remand a case for additional evidence or to simply award benefits is within the discretion of the court.  Ghokassian v. Shalala, 41 F.3d 1300, 1304 (9th Cir. 1994); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990).  In this regard, the Ninth Circuit has stated: "[g]enerally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed."  Ghokassian, 41 F.3d at 1304 (quoting Varney v. Sec'y of Health & Human Servs., 859 F.2d 1396, 1399 (9th Cir. 1988)).  This rule recognizes the importance of expediting disability claims.  Holohan v. Massanari,

246 F.3d 1195, 1210 (9th Cir. 2001); Ghokassian, 41 F.3d at 1304; Varney, 859 F.2d at 1401.  Where, as here, there were no legitimate reasons given for disregarding plaintiff's testimony, there is no need to remand the case for additional findings.  See Moisa, 367 F.3d at 887 (remanding for award of benefits where the ALJ erroneously rejected plaintiff's subjective pain testimony); Pitzer, 908 F.2d at 506.

If plaintiff's own testimony is properly credited, the evidence indicates that plaintiff is unemployable and disabled. Further, any work he might have been able to perform would not have amounted to substantial gainful activity since it would have been intermittent, irregular and subject to frequent interruptions due to his mental and physical impairments.  See Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989); Kornock v. Harris, 648 F.2d 525, 527 (9th Cir. 1980).  Plaintiff filed his application many years ago and no useful purpose would be served by delaying this matter further for additional administrative proceedings.  Finally, the court has serious doubts regarding the usefulness of any further proceedings in light of plaintiff's death.  See Maounis v. Heckler, 738 F.2d 1032, 1034 (9th Cir. 1984) ("Maounis is now dead; a new administrative hearing would serve no useful purpose."); Kornock, 648 F.2d at 527 ("A new administrative hearing would serve no useful purpose in this case.  Because Kornock is deceased, the evidence would be limited to existing medical reports and the ALJ would be without benefit of Kornock's further testimony.")  Therefore, this matter will be remanded with the direction to grant benefits.

**CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment is granted;

2. Defendant's motion for summary judgment is denied; and

3. The decision of the Commissioner of Social Security is reversed and this case is remanded for the immediate payment of benefits.

DATED: September 26, 2006.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:th
ddad1\orders.socsec\acosta0878.order

13